1  CHARLES H. BELL, JR. (SBN 60553)
2  Email: cbell@bmhlaw.com
   Paul Gough (SBN 75502)
3  Email: pgough@bmhlaw.com
   Brian T. Hildreth (SBN 214131)
4  Email: bhildreth@bmhlaw.com
5  Bell, McAndrews & Hiltachk, LLP
6  13406 Valleyheart Drive North
   Sherman Oaks, CA 91423
7  Tel.: (818) 971-3660/(916) 442-7757
8  Facs.: (818) 619-3791/(916) 442-7759

9  ROBERT D. POPPER*
10 Email: rpopper@judicialwatch.org
   Judicial Watch, Inc.
11 425 Third Street SW, Suite 800
12 Washington, D.C. 20024
   Tel.: (202) 646-5172
13 Facs.: (202) 646-5199

14
15 H. CHRISTOPHER COATES*
   Email: curriecoates@gmail.com
16 Law Office of H. Christopher Coates
   934 Compass Point
17 Charleston, South Carolina 29412
18 Tel.: (843) 609-0800

19 *Application for admission pro hac vice
20 forthcoming

21 Attorneys for Plaintiffs

22          UNITED STATES DISTRICT COURT
23
24         CENTRAL DISTRICT OF CALIFORNIA
25              WESTERN DIVISION
26
27 JUDICIAL WATCH, INC.,           Case No. _____
   ELECTION INTEGRITY PROJECT
28 CALIFORNIA, INC., WOLFGANG
   KUPKA, RHUE GUYANT, JERRY

GRIFFIN, and DELORES M. MARS,

              Plaintiffs,

     v.

DEAN C. LOGAN, in his official capacity as the Registrar-Recorder/County Clerk of Los Angeles County, California, and ALEX PADILLA, in his official capacity as the California Secretary of State,

              Defendants.

COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

## JURISDICTION AND VENUE

1.      Plaintiffs seek declaratory and injunctive relief to compel the Los Angeles County Registrar and the California Secretary of State to comply with their voter list maintenance obligations and their record production obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, and under 52 U.S.C. § 20510(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a defendant resides in this district and all defendants reside in California; and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## PARTIES

3.      Plaintiff JUDICIAL WATCH, INC. ("Judicial Watch") is a not-for-profit, educational organization incorporated under the laws of the District of

Columbia and headquartered at 425 Third Street SW, Suite 800, Washington, D.C. 20024.  Its mission is to promote transparency, integrity, and accountability in government and fidelity to the rule of law. As part of this mission, Judicial Watch regularly requests records from state and local governments pursuant to federal and state laws, analyzes the responses and disseminates both its findings and the requested records to the American public to inform it about "what the government is up to."  Judicial Watch will sue to enforce compliance with federal and state laws concerning the provision of records, public integrity, government accountability, and voting rights.  It has undertaken investigations and commenced other lawsuits to enforce the NVRA.

4.     Plaintiff ELECTION INTEGRITY PROJECT CALIFORNIA, INC. ("EIPC") is a registered non-profit organization incorporated under the laws of the State of California and headquartered at 27943 Seco Canyon Road #521, Santa Clarita, California, 91350.  EIPC seeks to promote citizen engagement through education and training to protect the integrity of the electoral process in California.  To this end, EIPC regularly requests voter registration records from jurisdictions in California, analyzes those records to determine compliance with the NVRA's list maintenance obligations, and notifies the jurisdictions about their findings.

5.     Plaintiff WOLFGANG KUPKA is a resident and a registered voter of Los Angeles County, California, who has voted and intends to vote in the County.

6.     Plaintiff RHUE GUYANT is a resident and a registered voter of Los Angeles County, California, who has voted and intends to vote in the County.

7.      Plaintiff JERRY GRIFFIN is a resident and a registered voter of Los Angeles County, California, who has voted and intends to vote in the County.

8.      Plaintiff DELORES M. MARS is a resident and a registered voter of Los Angeles County, California, who has voted and intends to vote in the County.

9.      Defendant DEAN C. LOGAN is the Registrar-Recorder/County Clerk of Los Angeles County, California (the "Registrar") and has served in this capacity since July 8, 2008.  The Registrar is the designated local "election official" under California law "responsible for collecting and processing voter registration data."  CAL. CODE REGS. tit. 2, § 20108.1(i).

10.     Defendant ALEX PADILLA is the California Secretary of State and has served in this capacity since January 5, 2015.  The Secretary of State is designated by California law as the "chief state elections official responsible for coordination of the state's responsibilities under" the NVRA.  CAL. ELEC. CODE § 2402(a); *see* 52 U.S.C. §20509.

11.     Both Defendants are sued in their official capacities only.

## BACKGROUND FACTS

### *Statutory Background*

12.     The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters."  52 U.S.C. § 20507(a)(4).

13.     Section 8(i) of the NVRA requires that each state " shall maintain for at least 2 years and shall make available for public inspection and . . . photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

14.     Under federal law, a voter becomes "ineligible," and the voter's name is subject to removal from a jurisdiction's voter rolls, when the voter moves out of the jurisdiction; specifically asks to be removed from the rolls; dies; is disqualified from voting under state law because of a criminal conviction or mental incapacity; or when an erroneous registration record is corrected, as when a registrant has registered in the wrong jurisdiction or is a noncitizen. 52 U.S.C. § 20507(a)(3), (4)(A), 4(B), (c)(2)(B)(ii).

15.     The NVRA provides that the registration of a voter who is believed to have moved out of a jurisdiction is only subject to removal from the voter rolls if (1) the voter confirms this move in writing, or (2) the voter fails to respond to an address confirmation notice, and then fails to vote during a statutory waiting period extending from the date of the notice through the next two general federal elections. 52 U.S.C. § 20507(d)(2)(B).

16.     California law provides that an "inactive voter" is a voter for whom a county has received a returned confirmation residency mailing without a forwarding address in the same county, or a voter who has been identified by the United States Postal Service's National Change of Address database as having moved outside the county. CAL. CODE REGS. tit. 2, § 20108(l).

17.     Under both the NVRA and California law, voters whose registrations are designated as "inactive" may still vote on election day.  52 U.S.C. § 20507(d)(2)(A); CAL. CODE REGS. tit. 2, § 20108(l).

18.     Because voters with inactive registrations may still vote on election day, inactive registrations must be counted as part of a county's voter registration list.

### *Los Angeles County's Excessive Registration Rate*

19.     In June of each odd-numbered year, the U.S. Election Assistance Commission ("EAC") is required by law to release a report regarding state voter registration practices.  52 U.S.C. § 20508(a)(3).

20.     States are required by federal regulations to provide various kinds of registration data to the EAC for use in this biennial report.  This data must include "the total number of registered voters statewide, including both 'active' and 'inactive' voters if such a distinction is made by the state," for the last two general federal elections.  11 C.F.R. § 9428.7(b)(1), (2).

21.     In June 2017, the EAC published its most recent report as well as datasets containing voter registration statistics based on information provided by the states.  This report and these datasets are available at https://www.eac.gov/research-and-data/election-administration-voting-survey/.

22.     Judicial Watch analyzed the data provided by the EAC in June 2017 and compared it to the most recent census data to determine the adult citizen registration rates

for United States counties.  Judicial Watch was able to do this for 2,958 of the approximately 3,100 counties or county equivalents in the United States.

23.    Whenever a jurisdiction has more voter registrations than resident citizens over the age of 18, meaning that its registration rate, including active and inactive registrations, is greater than 100%, it is a strong indication that that jurisdiction is not taking the steps required by law to cancel the registrations of ineligible registrants.

24.    Approximately 15% of the United States counties for which data is available from the EAC and the Census Bureau have adult citizen registration rates – including active and inactive registrations – exceeding 100%.

25.    Eleven of California's 58 counties have registration rates exceeding 100% of the age-eligible citizenry.

26.    Los Angeles County has more voter registrations on its voter rolls than it has citizens who are old enough to register.  Specifically, according to data provided to and published by the EAC, Los Angeles County has a registration rate of 112% of its adult citizen population.

27.    The entire State of California has a registration rate of about 101% of its age-eligible citizenry.

28.    The high registration rates in Los Angeles County and in and throughout the State of California indicate that Defendants have failed to conduct a general program that makes a reasonable effort to cancel the registrations of ineligible registrants.

### *Los Angeles County's Excessive Number of Inactive Registrations*

29.     Removing registrations that have been in an inactive status for more than two general federal elections is a necessary part of any effort to comply with the NVRA's mandate to conduct a general program that makes a reasonable effort to remove the registrations of ineligible registrants.

30.     Having a high number of inactive registrations is a strong indication that a state or jurisdiction is not removing inactive registrations after two general federal elections.

31.     Inactive registrations which may be voted by mail or in person on election day are particularly vulnerable to fraudulent abuse by a third party, because a voter who has moved to a different state is unlikely to monitor the use of or communications concerning an old registration.

32.     Inactive registrations are also inherently vulnerable to abuse by voters who plan to fraudulently double-vote in two different jurisdictions on the same election day.

33.     About 21% of all of California's voter registrations, or more than one in five, are designated as inactive.

34.     California has the highest rate of inactive registrations of any state in the country.

35.     According to data provided to and published by the EAC, Los Angeles County has a reported 1,515,330 inactive registrations.

36.     Los Angeles County has the highest number of inactive registrations of any single county in the country.

37.     On information and belief, a significant number of Los Angeles County's inactive registrations have been inactive for a period of time extending years beyond the most recent two general federal elections.

38.     Los Angeles County's high total number of inactive registrations indicates that Defendants have failed to conduct a general program that makes a reasonable effort to cancel the registrations of ineligible registrants.

### *The Higher Registration Numbers Reported Directly to Judicial Watch*

39.     On June 15, 2017, Judicial Watch made a telephone call to the Los Angeles County Office of the Registrar-Recorder/County Clerk to determine whether the website listing of "total registration" included both active and inactive registrants.  An employee at the Los Angeles County Registrar-Recorder's office told Judicial Watch during that call that the published number displayed only active registrants and that total inactive registrants were not publicly available.  When asked how many total active and total inactive registrations were in Los Angeles County as of June 15, 2017, the employee told Judicial Watch that there were currently 5,238,465 active registrations, and 3,475,328 inactive registrations, which is more than twice the 1,515,330 inactive registrations previously reported to the EAC.

40.     A total of 3,475,328 inactive registrations means that Los Angeles County's adult citizen registration rate is about 144%, which is one of the ten highest registrations rates among the thousands of counties in the United States.

41.     That number of inactive registrations in Los Angeles County raises the statewide percentage of inactive registrations in California to almost 27%, not 21% as reported by the EAC.

42.      That number of inactive registrations means that 40% of Los Angeles County's registrations are inactive.

43.     On November 16, 2017, Plaintiff Judicial Watch sent a request under the California Public Records Act (CPRA), CAL. GOV'T CODE § 6250 *et seq.*, on behalf of Plaintiff Delores M. Mars to the office of the Los Angeles County Registrar-Recorder/County Clerk seeking "[a]ll public records dated or created after April 10, 2017, that concern, refer to, state, estimate, or predict the number of inactive registrations on the voter rolls in Los Angeles County."

44.     On November 28, 2017, a representative of Defendant Logan responded that "there are no responsive documents available."

45.     On November 29, 2017, Plaintiff Judicial Watch sent a second request under the CPRA on behalf of Plaintiff Delores M. Mars to the office of the Los Angeles County Registrar-Recorder/County Clerk seeking "[a]ll public records dated or created between January 1, 2016 and April 10, 2017, that concern, refer

to, state, estimate, or predict the number of inactive registrations on the voter rolls in Los Angeles County."

46.     On December 11, 2017, a representative of Defendant Logan responded to this second request that "there are no responsive documents available."

47.     On information and belief, the data Judicial Watch received from the Los Angeles County Registrar-Recorder's office in June 2017 accurately reflects the true number of inactive registrations in Los Angeles County.

**_Defendants Are Violating the NVRA by Refusing to Cancel Old, Inactive Registrations_**

48.     California law provides that the "voter registration of any voter whose name has been placed on the inactive file . . . for failure to respond to an address verification mailing . . . who does not vote or offer to vote" for "two federal general elections . . . *may* be canceled."  CAL. ELEC. CODE §2226 (emphasis added).

49.     The "California NVRA Manual," updated August 2015 and issued by Defendant Padilla, which is available on the Secretary of State's website, states that the registration of a voter who does not return an address confirmation notice "may be cancelled," adding that "California law makes removal in this instance permissive rather than mandatory."

50.     In or about August 2017, Defendant Logan told a reporter for the Sacramento Bee that inactive registrations were being maintained on the voter rolls as a "fail-safe" for voters who may have moved but were eligible to vote.

51.     California reported to the EAC that Los Angeles County removed *zero* registrations between November 2014 and November 2016 for "[f]ailure to respond to notice sent and failure to vote in the two most recent Federal elections."

52.     The plain terms of the NVRA and related statutes require the removal of a registration where a voter fails to respond to an address confirmation notice and then does not vote in two general federal elections.

53.     The NVRA contains extensive provisions regarding the sending of address confirmation notices and the processing and removal of registrations where voters do not respond to such notices or vote during the statutory waiting period. 52 U.S.C. § 20507(d).  Simply refusing to cancel the registrations of voters who failed to respond to a confirmation notice and to vote during the prescribed waiting period, as Los Angeles County is doing, renders the NVRA's provisions regarding address confirmation notices superfluous and meaningless.

54.     As a practical matter, given that Los Angeles County has the highest number of inactive registrations of any county in the country, the registrations of those placed on the inactive list for two general federal elections after failing to respond to address confirmation notices must be removed to comply with the NVRA's mandate to conduct a general program that makes a reasonable effort to remove the registrations of ineligible registrants.

55.     Los Angeles County's practice of refusing to cancel the registrations of ineligible registrants, and any California law or guidance sanctioning that

practice, conflict with the NVRA, are superseded and preempted by it, and are invalid and unenforceable as a matter of federal preemption law.

56.    Los Angeles County's practice of refusing to cancel the registrations of ineligible registrants violates the NVRA.

### *Defendants Are Violating the NVRA by Failing to Send Enough Address Confirmation Notices*

57.    California reported to the EAC that Los Angeles County sent 187,329 address confirmation notices during the period from November 2014 to November 2016. This is about 93,664 confirmation notices each year.

58.    California reported to the EAC that Los Angeles County has about 5,238,894 active registrations.  This means that about 2% of those holding active registrations in Los Angeles County receive a confirmation notice each year.

59.    The Census Bureau reports that about 13% of the residents of Los Angeles County move each year.

60.    Los Angeles County is sending so few address confirmation notices relative to the size of its registration list that it is failing to conduct a general program that makes a reasonable effort to remove the registrations of ineligible registrants.

61.    Los Angeles County's failure to send enough confirmation notices to allow it to conduct proper list maintenance violates the NVRA.

*__Defendants Are Violating the NVRA in a Number of Ways Identified by the Los__*
*__Angeles County Auditor-Controller__*

62.     In May 2016, a local media outlet reported that 265 deceased voters, 215 of them from Los Angeles County, had voted in California elections.  Thirty-two had voted in eight elections each.  The reporter found that 212 of these voters were still registered and eligible to vote in the 2016 primaries.  David Goldstein, *CBS2 Investigation Uncovers Votes Being Cast from Grave Year After Year*, CBS LOS ANGELES, May 23, 2016, http://losangeles.cbslocal.com/2016/05/23/cbs2-investigation-uncovers-votes-being-cast-from-grave-year-after-year/.

63.     On May 24, 2016, in response to this report, the Los Angeles County Board of Supervisors instructed the Los Angeles County Auditor-Controller to report on protocols relating to voter file maintenance.

64.     On August 25, 2016, the Auditor-Controller submitted to the Board a follow-up review (the "Review") of previous recommendations regarding a number of topics, including duplicate registrations.

65.     Referring to an earlier report from February 2015 regarding duplicate registrations, the Review noted that six of ten prior recommendations had been only partially implemented, including recommendations relating to employee training.

66.     The Review noted that there was an ongoing issue with the submission of new registrations that did not contain a birthdate, and that that information was crucial to any effort to identify duplicate registrations.  The Review further noted that a test of 15

registrations without a birthdate showed that four (27%) "appear to be duplicate registrations based on their signed voter affidavits."

67.     The Review suggested that the Registrar should more accurately ensure that voting privileges are timely suspended in the Data Information Management System for individuals ineligible to vote.  The Review noted that updates to voter registrations concerning those deemed ineligible to vote on account of felony convictions, mental incompetence, or duplicate registrations were frequently made only after a considerable lapse of time, and that the State's computer system was limited in its ability to produce exception reports and audit trails.  The Review noted that the Auditor-Controller's recommendations on these issues were only "partially implemented."

68.     On information and belief, Los Angeles County is failing to properly conduct the list maintenance required by the NVRA by failing to properly train employees, failing to require and enter registrants' birthdates, and failing to timely process reports that registrants have died, have committed disqualifying felonies, are mentally incompetent, or have registered twice.

***Plaintiffs' Statutory Notice Letters to Defendants***

69.     On August 1, 2017, Judicial Watch sent a letter by email and by certified mail to Defendants Padilla and Logan, along with election officials in ten other California counties (the "First Notice Letter"), on behalf of itself, EIPC, and 21 individuals, including all of the individual plaintiffs in this action.

70.     The First Notice Letter observed that there were more registered voters than citizens of voting age in each of the identified counties, including Los Angeles County.

71.     The First Notice Letter stated that "these kinds of registration rates indicate a failure to comply with the voter list maintenance requirements of the NVRA," and asked Defendant Padilla "and, to the extent that they wish to respond separately, each county identified in this letter, to please respond to this letter in writing no later than 30 days from today informing us" of the steps being taken to come into compliance with the NVRA.

72.     Citing Section 8(i) of the NVRA, 52 U.S.C. § 20507(i), the First Notice Letter also requested that:

> your [Defendant Padilla's] office and, to the extent that they keep records separately from your office, each county named in this letter, [] make available to us all pertinent records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of California's official eligible voter lists during the past 2 years.

The First Notice Letter added that "[t]hese records should include, but are not limited to" six particular subcategories of records described in further detail in the letter.  The First Notice Letter asked Defendants either to provide records within 14 days or to advise Judicial Watch when they would be made available.

73.     To date Defendant Padilla has made no independent response to the First Notice Letter, except indirectly by way of press statements, comments to reporters, and tweets.

74.     Defendant Logan responded by letter on August 16, 2017 (the "Response Letter"), which copied Defendant Padilla, although it did not specifically claim to respond for him.

75.     The Response Letter briefly suggested that inactive registrations should not be considered, and that without them Los Angeles County's registration rates were at acceptable levels.

76.     The Response Letter did not mention any steps that Los Angeles County planned to take to comply with the NVRA.  Instead, the Response Letter posed a series of inquiries to Judicial Watch regarding its sources and methods.

77.     The Response Letter made no mention of the First Notice Letter's general request for all records from the past two years concerning the implementation of programs and activities designed to ensure the accuracy and currency of the State's voter rolls.

78.     Instead, the Response Letter purported to specifically address the six subcategories of record requests contained in the First Notice Letter.  Ultimately, the Response Letter refused to make available a single record in response to any of the subcategories of record requests, other than to identify "Advisories to County Election Officials" posted on the Secretary of State's website.

79.     On August 31, 2017, Judicial Watch wrote back (the "Second Notice Letter") to both Defendants, objecting to the Response Letter, disputing its assumption that inactive registrations were irrelevant to list maintenance, and pointing out that its

claims that there were no responsive records suggested either that Defendants were not conducting list maintenance activities or that there had been no serious effort at a response.

80.    The Second Notice Letter notified Defendants that they were in violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i).

81.    The Second Notice Letter invited a further response on the matters it discussed.  To date there has been no further response.

### *Defendants Are Violating the NVRA by Failing to Provide Requested Records*

82.    Defendant Padilla made no response to any of the First Notice Letter's requests for records pursuant to Section 8(i) of the NVRA, 52 U.S.C. § 20507(i).

83.    In response to the First Notice Letter's request for Los Angeles County's voter registration list, Defendant Logan in the Response Letter refused to provide that list on the grounds that he did not "maintain separate records of the statewide California database," and that disclosure was barred by 52 U.S.C. § 20504(b) and various State laws.

84.    The stated reasons are faulty, given that Defendant Logan can access the voter registration database, that 52 U.S.C. § 20504(b) refers to information relating to an applicant's failure to sign a voter registration application, which the First Notice Letter did not seek, and that any California statutes purporting to proscribe the right to obtain access to records described by Section 8(i) are superseded and preempted by federal law.

85.     Defendant Logan contended in the Response Letter that he knows of no other records responsive to any of the other requests in the First Notice Letter (except for advisories posted on the Secretary of State's website).  This contention is demonstrably incorrect.

86.     The May 24, 2016 correspondence from the Los Angeles County Board of Supervisors to the Los Angeles County Auditor-Controller, and the August 25, 2016 Auditor-Controller's follow-up review, discussed above, and other records they incorporate or refer to, were records concerning activities conducted for the purpose of ensuring the accuracy and currency of California's voter list, and should have been provided in response to the First Notice Letter.

87.     California law mandates the creation of many different kinds of records that should have been produced in response to the First Notice Letter's request.  *See, e.g.,* 2 CAL. CODE REGS. tit. 2, § 20108.55 (Secretary of State must transmit to counties *notices of potential matches* of persons who have died or been convicted of disqualifying felonies) (emphasis added); CAL. ELEC. CODE § 2205 (local registrar of births and deaths must contact county election officials with a *monthly report*) (emphasis added); CAL. CODE REGS. tit. 2, § 20108.25 (registration records that are missing substantive information are to be returned to the submitting local official along with *a deficiency notice*) (emphasis added); CAL. CODE REGS. tit. 2, § 20108.60 (Secretary of State must check for duplicate registrations and send *notices of duplicates* to county officials) (emphasis added).

88.     On information and belief, Los Angeles County, with over 5 million active voters and massive list maintenance responsibilities, and the Secretary of State of California have exchanged emails responsive to the First Notice Letter's request for "all email or other communications between the Secretary's Office and all California County voter registration officials concerning . . . [i]nstructions to the counties concerning their general list maintenance practices and obligations" and "[n]otices to the counties concerning any failure to comply with their voter list maintenance obligations."  Such emails should have been produced.

89.     On information and belief, Defendants made no effort to search for records responsive to First Notice Letter's requests.

90.     Defendant Padilla's failure to make any response to either the general or the six specific requests for records contained in the First Notice Letter violates his obligations under Section 8(i) of the NVRA.

91.     Defendant Logan's failure in the Response Letter to answer or acknowledge the First Notice Letter's general request for records as well as his inadequate responses to the First Notice Letter's six specific requests for records violate his obligations under Section 8(i) of the NVRA.

***Plaintiffs' Interest in Compliance With the NVRA***

92.     As part of its mission to promote transparency, integrity, and accountability in government and fidelity to the rule of law, Plaintiff Judicial Watch regularly requests records from state and local governments pursuant to Section 8(i) of the NVRA.  Judicial

Watch analyzes all responses, as well as federal, state, and local data from any available source, to determine whether jurisdictions are properly maintaining accurate voter rolls as required by Section 8(a)(4) of the NVRA. If it believes that a jurisdiction is not complying with Section 8 of the NVRA, Judicial Watch will sue under 52 U.S.C. § 20510(b) to enforce that statute.

93.     Judicial Watch recently wrote to eleven other states besides California to inform them of perceived violations of the NVRA and to request NVRA-related documents. Judicial Watch has a current NVRA lawsuit against Montgomery County, Maryland, and the Commonwealth of Kentucky, and in the recent past has sued and resolved NVRA cases against Ohio and Indiana. Judicial Watch also has submitted several friend-of-the-court briefs at all levels of the federal court system in cases concerning enforcement of the NVRA.

94.     Defendants' failure to comply with Section 8 of the NVRA has caused and will cause Plaintiff Judicial Watch to expend significant additional time and resources to achieve its basic organizational mission.

95.     As part of its institutional mission, Plaintiff EIPC requests voter registration records from California counties and analyzes those records to determine compliance with the NVRA's list maintenance requirements. The purpose of such an analysis is to produce what is known as a "Findings Report," which is then typically presented to the county administration. A Findings Report sets forth EIPC's statistical analysis of a county's voter registration rolls, detailing, for example, the number of voter registrations

exceeding the age-eligible population; the number of same-address duplicate registration; suspected duplicate registrations in other California counties; deceased registrants matching a State death record; registrants who are either underage or older than 105 based on their listed birth dates; registrations missing crucial information; and suspected instances of double voting or deceased voting.

96.    EIPC previously submitted several Findings Reports to various California counties in recent years, including Los Angeles County.  EIPC currently is preparing another Findings Report for Los Angeles County.

97.    Defendants' failure to comply with Section 8 of the NVRA has made Plaintiff EIPC's basic organizational mission more difficult to accomplish and has caused and will cause EIPC to expend significant, additional time and resources to accomplish this mission.

98.    A person becomes a member of Judicial Watch by making a financial contribution, in any amount, to the organization.  The financial contributions of members are by far the single most important source of income to Judicial Watch and provide the means by which the organization finances its activities in support of its mission.

99.    Judicial Watch has approximately 160,734 members in the State of California, and 22,205 members in Los Angeles County.  As a membership organization, Judicial Watch represents the interests of these members, many of whom are lawfully registered to vote and have the right to vote in California and Los Angeles County, including the right to vote in elections for federal office.

100.    Judicial Watch solicits the views of its members in carrying out activities in support of its mission, including the views of its members in Los Angeles County.  The views of Judicial Watch's members significantly influence how Judicial Watch chooses activities to engage in to further its mission.

101.    About 2600 of Judicial Watch's Los Angeles County members have an email address and have contributed $5 or more to Judicial Watch within the past two years.  Of these, 375 who are lawfully registered to vote in Los Angeles County have directly informed Judicial Watch that they are concerned about Los Angeles County's failure to satisfy its obligations under Section 8 of the NVRA, and wish Judicial Watch to take legal action on their behalf to protect their rights.  The views of Judicial Watch's members were a substantial factor weighing in favor of initiating this lawsuit.

102.    Protecting the rights of Judicial Watch members who are lawfully registered to vote in Los Angeles County and ensuring compliance with the voter list maintenance obligations of Section 8 of the NVRA are part of Judicial Watch's mission.  They also are well within the scope of the reasons why members of Judicial Watch join the organization and support its mission.

103.    Members of Judicial Watch who are lawfully registered to vote in Los Angeles County not only have the constitutional right to vote in state elections, including elections for federal office, but they also have a statutory right to the safeguards and protections set forth in the NVRA.

104.   Plaintiffs Wolfgang Kupka, Rhue Guyant, Jerry Griffin, and Delores M. Mars, are lawfully registered voters in Los Angeles County and members of Judicial Watch.

105.   Los Angeles County's failure to comply with the NVRA inflicts a burden on the constitutional right to vote of those members of Judicial Watch who are lawfully registered to vote in Los Angeles County, including the individual plaintiffs in this action, by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be outweighed by fraudulent or ineligible ones.

106.   Los Angeles County's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA infringes the statutory rights of those members of Judicial Watch who are lawfully registered to vote in Los Angeles County, including the individual plaintiffs in this action.  These individuals have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA, including the voter list maintenance obligations set forth in Section 8.

107.   Absent action by Judicial Watch, it is unlikely that any individual member of Judicial Watch would have the ability or the resources to take legal action to protect their rights or redress their injuries with respect to Los Angeles County's failure to satisfy its voter list maintenance obligations under the NVRA.

108.   Judicial Watch; its Los Angeles County members, including Wolfgang Kupka, Rhue Guyant, Jerry Griffin, and Delores M. Mars; and EIPC are

all persons aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. §

20510(b)(1).

109.   The First Notice Letter and the Second Notice Letter constitute statutory

notice, pursuant to 52 U.S.C. § 20510(b)(1), of violations of Sections 8(a)(4) and 8(i) of

the NVRA.

**First Claim for Relief**

**(Violation of Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4))**

110.   Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

111.   Defendants have failed to fulfill Los Angeles County's obligations under

Section 8(a)(4) of the NVRA to conduct a general program that makes a reasonable effort

to cancel the registrations of registrants who are ineligible to vote in California federal

elections.

112.   Plaintiffs have suffered, and will continue to suffer, irreparable injury as a

direct result of Defendants' failure to fulfill Los Angeles County's obligations to comply

with Section 8(a)(4) of the NVRA.

113.   Plaintiffs have no adequate remedy at law.

**Second Claim for Relief**

**(Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i))**

114.   Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

115.   Defendants have failed to fulfill their obligations under Section 8(i) of the

NVRA to make available to Plaintiffs "all records" within the past two years "concerning

the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."

116.   Plaintiffs have suffered, and will continue to suffer, irreparable injury as a direct result of Defendants' failure to fulfill their obligations under Section 8(i) of the NVRA.

117.   Plaintiffs have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for entry of a judgment:

a.     Declaring Defendants to be in violation of Section 8(a)(4) of the NVRA;

b.     Permanently enjoining Defendants from violating Section 8(a)(4) of the NVRA;

c.     Declaring that Section 8(a)(4) of the NVRA supersedes and preempts any contrary California law;

d.     Ordering Defendants to develop and implement a general program that makes a reasonable effort to remove from Los Angeles County's rolls the registrations of ineligible registrants;

e.     Declaring that Section 8(i) of the NVRA supersedes and preempts any contrary California law;

f.     Declaring that Defendants are in violation of Section 8(i) of the NVRA by refusing to allow Plaintiffs to inspect and copy the requested records;

g.     Permanently enjoining Defendants from refusing to allow Plaintiffs to inspect and copy the requested records;

h.     Ordering Defendants to pay Plaintiffs' reasonable attorney's fees, including litigation expenses and costs; and

i.     Awarding Plaintiffs such other and further relief as this Court deems just and proper.

Dated:     December 13, 2017                Respectfully submitted,

CHARLES H. BELL, JR. (SBN 60553)
Email: cbell@bmhlaw.com
Paul Gough (SBN 75502)
Email: pgough@bmhlaw.com
Brian T. Hildreth (SBN 214131)
Email: bhildreth@bmhlaw.com
Bell, McAndrews & Hiltachk, LLP
13406 Valleyheart Drive North
Sherman Oaks, CA 91423
Tel.: (818) 971-3660/(916) 442-7757
Facs.: (818) 619-3791/(916) 442-7759

ROBERT D. POPPER*
Email: rpopper@judicialwatch.org
Judicial Watch, Inc.
425 Third Street SW, Suite 800
Washington, D.C. 20024
Tel.: (202) 646-5172
Facs.: (202) 646-5199

H. CHRISTOPHER COATES*
Email: curriecoates@gmail.com
Law Office of H. Christopher Coates
934 Compass Point
Charleston, South Carolina 29412
Tel.: (843) 609-0800

*Application for admission pro hac vice forthcoming*

Attorneys for Plaintiffs