BELL, MCANDREWS & HILTACHK, LLP
CHARLES H. BELL, JR. (SBN 60553)
    Email:  cbell@bmhlaw.com
PAUL GOUGH (SBN 75502)
    Email:  pgough@bmhlaw.com
BRIAN T. HILDRETH (SBN 214131)
    Email:  bhildreth@bmhlaw.com
    13406 Valleyheart Drive North
    Sherman Oaks, CA 91423
    Tel.:  (818) 971-3660/(916) 442-7757
    Facs.:  (818) 986-2581/(916) 442-7759

[Additional counsel listed on subsequent page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., et al.<br><br>                    Plaintiffs,<br>    v.<br><br>DEAN C. LOGAN, et al.<br><br>                    Defendants. | Case No. 2:17-cv-08948-R-SK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO INTERVENE (ECF No. 31)**<br><br>Hon. Manuel L. Real<br>Hearing Date: June 4, 2018<br>Time: 10:00 a.m.<br>Crtrm: 880<br><br>Action Filed: December 13, 2017 |

1    [Additional counsel]

2

3    JUDICIAL WATCH, INC.
     ROBERT D. POPPER*
4        Email:  rpopper@judicialwatch.org
     RAMONA R. COTCA*
5        Email:  rcotca@judicialwatch.org
     ERIC W. LEE*
6        Email:  elee@judicialwatch.org
         425 Third Street SW, Suite 800
7        Washington, D.C. 20024
         Tel.:  (202) 646-5172
8        Facs.:  (202) 646-5199

9    LAW OFFICE OF H. CHRISTOPHER COATES
     H. CHRISTOPHER COATES*
10       Email:  curriecoates@gmail.com
         934 Compass Point
11       Charleston, South Carolina 29412
         Tel.:  (843) 609-0800
12   *Admitted pro hac vice
     *Attorneys for Plaintiffs Judicial Watch, Inc., Election Integrity Project California,
13   Inc., Wolfgang Kupka, Rhue Guyant, Jerry Griffin, and Delores M. Mars.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Introduction ...................................................................................................... 1

Argument .......................................................................................................... 2

I.   THE COURT SHOULD DENY MOVANTS' REQUEST
     FOR INTERVENTION AS OF RIGHT ................................................. 2

     A.   Movants Have No "Significantly Protectable Interest"
          in the Subject Matter of this Case .............................................. 2

     B.   Movants Have No Interest that Will be Impaired
          in this Case without Their Participation ..................................... 6

     C.   Movants Have Not Overcome the Presumption of
          Adequate Representation by the Government Defendants ........... 9

II.  THE COURT SHOULD DENY MOVANTS' REQUEST
     FOR PERMISSIVE INTERVENTION ................................................ 14

Conclusion ...................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE NO.**

*Allied Concrete & Supply Co. v. Brown*,
    2016 U.S. Dist. LEXIS 191495 (C.D. Cal. Sept. 26, 2016) ................................ 6, 16

*American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ........................ 16

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ............................... 9, 10, 13

*Beckman Industries, Inc. v. International Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) ................................................................. 14

*Bellitto v. Snipes*, 2016 U.S. Dist. LEXIS 193489 (S.D. Fla. Oct 4, 2018) ................. 5, 12

*California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775 (9th Cir. 1986) ........... 9, 11, 16

*Daggett v. Commission on Gov. Ethics*, 172 F.3d 104 (1st Cir. 1999) ............................ 11

*Dep't of Fair Employment and Housing v. Lucent Tech., Inc.*,
    642 F.3d 728 (9th Cir. 2011) ................................................................. 11

*Diamond v. Charles*, 476 U.S. 54 (1986) .................................................. 14, 15

*Donahoe v. Arpaio*, 2012 U.S. Dist. LEXIS 93497 (D. Ariz. July 6, 2012) .................... 15

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ........................................ 3, 6, 7, 16

*Earth Island Inst. v. Evans*, 136 F. App'x 34 (9th Cir. 2005) ......................................... 12

*Fair Political Practices Com'n v. U.S. Postal Serv.*,
    2012 U.S. Dist. LEXIS 58759 (E.D. Cal. Apr. 26, 2012) ....................................... 14

*Georgia v. Ashcroft*, 539 U.S. 461 (2003) ...................................................... 5, 6

*Georgia v. Ashcroft*, 2002 U.S. Dist. LEXIS 13088 (D.D.C. Jan. 10, 2002) ..................... 5

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) ................................................. 8, 9

*Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017) ................................................. 10

*Hawaii-Pacific Venture Capital Corp. v. Rothbard*,
    564 F.2d 1343 (9th Cir. 1977) ................................................................ 8

*Johnson v. San Francisco Unified School Dist.*, 500 F.2d 349 (9th Cir. 1974) ............... 13

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ............................ 14

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin*,
    116 F.R.D. 608 (W.D. Wis. 1987) ........................................................ 15

*Laube v. Campbell*, 215 F.R.D. 655 (M.D. Ala. 2003) ...................................... 15

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ....................................................11, 12, 13

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
    2016 U.S. Dist. LEXIS 9753 (N.D. Cal. Jan. 27, 2016) .......................... 8

*Meek v. Metropolitan Dade Cnty., Fla.*, 985 F.2d 1471 (11th Cir. 1993) ..................... 12

*Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) ........................ 5, 6

*Northern Cal. River Watch v. Fluor Corp.*,
    2014 U.S. Dist. LEXIS 93420 (N.D. Cal. July 9, 2014) .......................... 8

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ................ 3

*Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*,
    775 F. Supp. 353 (D. Or. 1991) .......................................................... 12

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009) ................ 2, 15

*Pest Comm. v. Miller*, 648 F. Supp. 2d 1202 (D. Nev. 2009) ................................ 9

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) .......................................... 11

*Sagebrush Rebellion v. Watt*, 713 F.2d 525 (9th Cir. 1983) .............................. 12, 13

*SEC v. Private Equity Mgmt. Grp., Inc.*,
    2009 U.S. Dist. LEXIS 135683 (C.D. Cal. Aug. 5, 2009) ....................... 12

*Sierra Club, Inc. v. Leavitt*, 488 F.3d 904 (11th Cir. 2007) ............................ 12

*Southwest Center for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ................................................................. 13

*Texas v. U.S.*, 805 F.3d 653 (5th Cir. 2015) ........................................................ 3

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014)................................ 14

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004)................................ 3, 6

*United States v. Brooks*, 164 F.R.D. 501 (D. Or. 1995) ...................................... 15

*United States v. California*,
   2018 U.S. Dist. LEXIS 71403 (E.D. Cal. April 27, 2018) ...................................... 12

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)........................ 7, 9, 10

**Statutes and Rules**

Cal. Elec. Code § 2220 ........................................................................... 4

Cal. Elec. Code § 2224 ........................................................................... 4

Cal. Elec. Code § 2225 ........................................................................... 4

52 U.S.C. § 10301 ................................................................................. 7

52 U.S.C. § 20506 ................................................................................. 5

52 U.S.C. § 20507 ..........................................................................*passim*

52 U.S.C. § 20510 ................................................................................. 7

Federal Rule of Civil Procedure 24 .....................................................*passim*

**Other**

7C Wright, Miller & Kane, § 1909 ............................................................ 9

## **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

Three political organizations, Mi Familia Vota Education Fund, Rock the Vote, and League of Women Voters of Los Angeles ("Movants") seek to intervene and participate alongside state and local government Defendants.

This action is brought by four residents of Los Angeles, Judicial Watch, Inc., and Election Integrity Project California, Inc. (collectively "Plaintiffs") to vindicate violations of the National Voter Registration Act ("NVRA") by Los Angeles County and the State of California, relating to the County's failure to implement appropriate list maintenance procedures to remove ineligible voters from its rolls.   [Doc. No. 1.] Named as official-capacity Defendants are Dean Logan, the Registrar-Recorded/County Clerk of Los Angeles County, and Alex Padilla, California's Secretary of State.  *Id.* at 4.

Plaintiffs claim (1) that Defendants have violated Section 8(a)(4) of the NVRA by failing to conduct a general program that makes a reasonable effort to cancel the registrations of persons who are ineligible to vote in California in federal elections; and (2) that Defendants have violated Section 8(i) of the NVRA by failing to make available to Plaintiffs all records within the past two years concerning Defendants' programs and activities intended to ensure that its voter lists are accurate and current.  Doc. No. 1 at 11-26.   Defendants were served on January 2, 2018 [Doc. No. 22], and both filed Answers on January 23, 2018.  [Doc. Nos. 24, 25.]  Defendants Logan and Secretary Padilla have denied any violations of the NVRA.  *Id.*  Discovery is ongoing.  *See* Doc. No. 38.

By Order issued on March 21, 2018, the discovery deadline was set for October 15, 2018, and trial was set for December 4, 2018.  [Doc. No. 28.]  Due to the complexity and scale of discovery required, including approximately thirty (30) anticipated witness depositions, Plaintiffs and Defendants have requested a ninety-day extension of these deadlines.  [Doc. No. 38.]

On April 17, Movants filed the instant motion to intervene, as well as a

supplement with a proposed Answer. [Doc. Nos. 32, 33.] They seek to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternate, permissively under Rule 24(b)(1)(B). Both forms of requested intervention should be denied. As discussed below, the proposed answer shows that their intervention will effectively reopen issues already resolved in these proceedings.

Applicants have no significantly protectable interest that would be impaired by the claims Plaintiffs bring. The government Defendants are providing more than adequate representation in defending against Plaintiffs' claims and the relief sought. And the already-cumbersome nature of the extensive discovery in this case would be compounded significantly if Movants were allowed to intervene. This added time and expense is unnecessary, because the government Defendants are providing vigorous representation, as they are presumed to do by the case authority of the Ninth Circuit.

There is no basis for Movants to intervene as of right or with permission. Their motion should be denied.

## ARGUMENT

## I.   THE COURT SHOULD DENY MOVANTS' REQUEST FOR INTERVENTION AS OF RIGHT.

Movants first seek to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), which permits intervention only if four elements are satisfied: (1) the request to intervene must be timely; (2) Movants must show "a significantly protectable interest" related to the "property or transaction that is the subject of the action;" (3) Movants must demonstrate they are "situated such that disposition of the action may impair or impede" their ability to protect the interest at stake; and (4) the protectable interest "*must* not be adequately represented by existing parties." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (emphasis added) (citations omitted).

Failing to demonstrate just one of these elements dooms a motion to intervene as of right under Rule 24(a)(2). *Id.* Here, Movants have failed to establish three of the

1    four.

2    ## A.    Movants Have No "Significantly Protectable Interest" in the Subject
3    Matter of this Case.

4         To show a "significantly protectable interest," Movants must (1) assert an interest

5    protected by law, and (2) prove a "relationship" between the legally protected interest

6    and Plaintiffs' claims in this litigation.  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th

7    Cir. 1998), citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837

8    (9th Cir. 1996); *see also United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th

9    Cir. 2004).   Movants will satisfy this "relationship requirement" only if resolving

10   Plaintiffs' claims "actually will affect" them.  *Donnelly*, 159 F.3d at 410 (citations and

11   quotation marks omitted).

12        The required connection between Movants' legally protected interests and

13   Plaintiffs' claims is missing.  Movants claim to be engaged in the "registration of

14   *eligible* non-college youth, new citizens, elderly, people of color and low-income

15   Americans" [Doc. No. 31-6, ¶ 4 (emphasis added)] and to be concerned about

16   "*legitimate* voters" [Doc. No. 31-4, ¶ 7].  To be sure, Movants' members who are

17   lawful voters have the same panoply of federal and state voting rights as any other

18   citizen.  But Plaintiffs have alleged that Los Angeles County is not identifying and

19   removing the registrations of *ineligible* voters.  [Doc. No. 1 at 11-26.]  Of particular

20   concern are voters who have moved elsewhere but whose inactive registrations are

21   never cancelled as the NVRA requires.  *Id.*, ¶¶ 16-17, 34-37.  Taking voters who have

22   moved to another jurisdiction off the rolls in Los Angeles County simply does not affect

23   the voting rights of eligible voters.  No provision of the U.S. Constitution, the Voting

24   Rights Act, or California law guarantees that a person who is not a legal resident of a

25   particular jurisdiction has some sort of protected legal right to vote there.   While

26   Movants may have political *preferences* as to how the NVRA should be enforced, these

27   cannot justify intervention.  *See Texas v. U.S.*, 805 F.3d 653, 657 (5th Cir. 2015) ("[A]n

28   intervenor fails to show a sufficient interest when he seeks to intervene solely for

ideological . . . reasons; that would-be intervenor merely *prefers* one outcome to the other.") (citations omitted).

Relying on conjecture and speculation, Movants contend that their members' registrations could be accidentally removed from the rolls if flawed list maintenance procedures – which Movants do not specifically identify – were ever adopted. Thus, the declarations submitted in support of the motion to intervene worry that future "unspecified steps" taken by Los Angeles County could cause "indiscriminate purging" of lawful voters, and contend that "wrongful removal" could result "from untested methods of list maintenance," without saying what these untested methods are [Doc. No. 31-5, ¶ 8; *see also* Doc. No. 31-6, ¶ 8 (using the same phrase)].[1]  These declarants are simply heaping speculation on top of speculation, arguing without a shred of evidence that presently unknown measures that *might* be imposed at the remedial stage of this litigation *might* be flawed.  It is pure speculation to suggest that Plaintiffs would ask for "untested methods" or "indiscriminate purging," that Defendants would agree to such things, or that this Court would order them.  Movants' worst fears, unsupported by facts, do not establish a relationship between their alleged legally protected interests and Plaintiffs' claims in this case.

Movants' brief is not just speculative, it is plainly counterfactual when it argues that the NVRA "does not permit the court-ordered voter removal program Plaintiffs are requesting."  Mov. Br. 1.  Plaintiffs are at a loss to identify what this might refer to, because they have not requested any particular program.  Rather, Plaintiffs' complaint seeks a judgment "enjoining Defendants from violating" the NVRA and ordering them "to develop and implement a general program that makes a reasonable effort to remove from Los Angeles County's rolls the registrations of ineligible registrants."  [Doc. No. 1

---

[1]  Indeed, only one of Movants' declarations mentions a specific list maintenance practice, suggesting that the "use of postcard mailings to properly registered voters" is "problematic."  [Doc. No. 31-4, ¶ 8].  But such mailings are expressly authorized by both federal and California law. 52 U.S.C. § 20507(d)(2); CAL. ELEC. CODE §§ 2220(a), 2224(a), 2225(a).

at 26 (Prayer for Relief)].  Indeed, this fact distinguishes this case from *Bellitto v. Snipes*, No. 16-cv-61474, slip op. (S.D. Fla. Mar. 30, 2018) [Doc. No. 31-3 (Exhibit A to Declaration of Anna Do)], cited by Movants.  Mov. Br. 7.  In that case, the plaintiffs proposed a specific program that included a number of non-statutory techniques (such as utilizing information from jury rolls) to perform list maintenance.  Such techniques ultimately were rejected by the court as not legally required.  *Id.* at 38-41 (internal page nos. 36-39).  In those circumstances, it was plausible for the court, in its decision granting intervention, to credit intervenors' argument that the "court-ordered 'voter list maintenance' sought by Plaintiffs in Count I 'could itself violate the NVRA.'"  *Bellitto v. Snipes*, No. 16-cv-61474, 2016 U.S. Dist. LEXIS 193489, at *4 (S.D. Fla. Oct 4, 2018).  But that argument simply does not apply here, especially given that the Plaintiffs' complaint only cites existing state and federal statutes.

Movants also cite *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015), but that case is inapposite.  Mov. Br. 8.  It arose under Section 7 of the NVRA, which requires state public assistance offices to conduct certain voter registration activities.  52 U.S.C. § 20506(a).  It was a straightforward matter for the plaintiffs, who sought to register voters, to claim an organizational injury when state agencies failed to conduct the voter registration activities required by law.  *Nat'l Council of La Raza,* 800 F.3d at 1036-37.  Movants here, on the other hand, seem to be asserting an interest in having California *not* follow federal law.

The interest found in *Georgia v. Ashcroft*, 539 U.S. 461 (2003), also cited by Movants (Mov. Br. 7), was far stronger than that alleged here.  At issue in *Ashcroft* was whether Georgia's statewide senate redistricting plan was entitled to pre-clearance.  *Id.* at 465.  The United States had interposed an objection to the plan under Section 5 of the Voting Rights Act on the grounds that the redistricting would dilute black citizens' votes in state senate districts.  *Id.* at 473-74.  The district court granted intervention to four African-American registered voters who had alleged that "their right to vote will be impaired by the proposed redistricting plans."  *Georgia v. Ashcroft*, 1:01-CV-2111-

EGS-LFO, 2002 U.S. Dist. LEXIS 13088, at *2 (D.D.C. Jan. 10, 2002), *vacated and remanded on other grounds*, 539 U.S. 461 (2003).   The court noted that this was sufficient to confer standing, let alone a protectable interest.   *Id.*   In other words, the intervenors in *Ashcroft* had direct and personal Article III standing, grounded in the relative power of their own votes, to challenge Georgia's redistricting plan.

In contrast with the plaintiffs in *La Raza* and the intervenors in *Ashcroft*, Movants, who claim to represent eligible voters, have no protectable interest relating to Plaintiffs' claims that Defendants are failing to remove ineligible voters as required by law; nor can they create such an interest by speculating about events that might occur – but that have not yet.   *See Alisal Water Corp.*, 370 F.3d at 920 (interest as a potential future creditor was "several degrees removed" from the public health and environmental policies at issue in an enforcement action under the Safe Drinking Water Act) (citation omitted);   *Donnelly*, 159 F.3d at 408, 410 (male workers claiming discrimination by Forest Service could not intervene in discrimination case brought by female workers); *see also Allied Concrete & Supply Co. v. Brown*, No. 2:16-CV-4830, 2016 U.S. Dist. LEXIS 191495, at *6 (C.D. Cal. Sept. 26, 2016) (denying motion to intervene by union whose members' wages would not be directly impacted if statute challenged in statute were invalidated, but who would merely lose the statute as a "*statutory backstop*").

In short, Movants have not explained how any of their members' voting rights will be imperiled if Defendants are compelled to comply with federal and state law concerning voter list maintenance.   There is no relationship between Movants' speculative interest and the subject matter of this suit.   For this reason alone, their motion should be denied.

**B.    Movants Have No Interest that Will be Impaired in this Case without Their Participation.**

For all the same reasons that Movants cannot show a legally protectable interest related to the subject matter of this action, they cannot show any impairment of their

ability to protect their interests.  *See* FED. R. CIV. P. 24.  Plaintiffs seek to compel Defendants to develop and implement a general program that makes a reasonable effort to remove ineligible registrants from Los Angeles County's voter rolls, as required by the NVRA.  [Doc. No. 1 at 26.]  Movants speculate their interests *may* be harmed *if* Plaintiffs prevail and *if* this Court grants, not the relief sought in the complaint, but what they call "unspecified steps" and "untested methods" that would cause "indiscriminate purging" and "wrongful removal" of lawful voters.  Surely the requirements that intervenors show a protectable legal interest, related to the Plaintiffs' claims, that will be impaired without their participation cannot be satisfied by such empty rhetoric.

In addition to their failure to establish the required nexus, Movants' own moving papers acknowledge avenues for their members to protect any voting rights through independent action.  If the rights of Movants or their members ever were violated, the NVRA affords a private right of action for a "person who is aggrieved by a violation" of the Act.  52 U.S.C. § 20510(b).  Section 2 of the federal Voting Rights Act grants a private cause of action where voting restrictions or procedures "result[] in a denial or abridgement" of a citizen's right to vote "on account of race or color . . . ."  52 U.S.C. § 10301(a).

These private remedies counsel against finding any impairment under existing Ninth Circuit precedent.  In *United States v. City of Los Angeles*, 288 F.3d 391, 396 (9th Cir. 2002), for example, the federal government sought to enjoin certain police practices and, after filing, entered into a proposed consent decree with the City of Los Angeles, the Board of Police Commissioners of the City of Los Angeles, and the Los Angeles Police Department ("LAPD").  Community groups and private individuals sought intervention to protect their members' rights to be free from unconstitutional police practices.  *Id.* at 397.  The Ninth Circuit found it "doubtful" that the community intervenors' interests would be impaired because the litigation did "not prevent any individual from initiating suit against LAPD officers who engage in unconstitutional practices or against the City defendants for engaging in unconstitutional patterns or

practices." *Id.* at 402. Further, no "aspect of the litigation [would] prevent the community organizations from continuing to work on police reform." *Id.* Here too, no individual member of the Movant organizations will be precluded from bringing a private right of action, and nothing in this litigation would preclude Movants from working to achieve their political goals.

Other cases are in accord with the principle that an independent action precludes a finding of potential impairment. *See Donnelly*, 159 F.3d at 409-12 (affirming denial of motion to intervene where male employees' were "undeniably" covered by Title VII and could have, therefore, brought their own discrimination lawsuits); *Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (noting that third element was not met because, *inter alia*, movants were free to bring their individual claims in independent actions); *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 12-CV-5064-JSC, 2016 U.S. Dist. LEXIS 9753, at *9-10 (N.D. Cal. Jan. 27, 2016) (ability to file independent action weighed against finding of impairment of interest).

Movants argue that the potential *stare decisis* effect of any court-ordered relief supports a finding that their interests may be impaired. Mov. Br. 9-10. This is incorrect. Courts "have found a potential impairment where a decision on appeal could create binding law that would limit the intervenor's ability to fully litigate its case in a future proceeding." *Northern Cal. River Watch v. Fluor Corp.*, No. 10-CV-5105-MEJ, 2014 U.S. Dist. LEXIS 93420, at *57 (N.D. Cal. July 9, 2014) (analyzing Ninth Circuit law and finding no practical impairment based on *stare decisis* effect) (citation omitted). But the "precedential impact must be clear to be basis of protectable interest for intervention." *Id.* at *58, citing *Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993). "[S]peculative stare decisis effects," moreover, "are not sufficient to warrant intervention." *Id.*, citing *Greene*, 996 F.2d at 977 (movants' interest in "*stare decisis* is too speculative to warrant intervention.").

The potential *stare decisis* effect Movants refer to is as hypothetical as their interest in Plaintiffs' claims. Movants do not explain in their brief the kind of *stare*

*decisis* effect they are concerned about, but it is worth considering what they must mean. Given the interests they have described, they must mean that this Court may ratify "unspecified steps" and "untested methods" that Movants cannot, at present, identify, but which they are certain will result in "indiscriminate purging" and "wrongful removal" of legitimate registrations; and they must be further concerned that the Ninth Circuit will uphold this Court's error. Again, there is no basis for assuming that Plaintiffs would seek, that Defendants would allow, that this Court would order, or that the Ninth Circuit would uphold improper list maintenance activities that threatened citizens' voting rights. Movants' claimed *stare decisis* concerns are, thus, another level of unsupported conjecture, "too speculative to warrant intervention." *Greene*, 996 F.2d at 977.

## C. Movants Have Not Overcome the Presumption of Adequate Representation by the Government Defendants.

The Ninth Circuit considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986) (citations omitted). In other types of cases, proposed intervenors are faced with a "minimal" burden to show inadequacy, and can be enough to show that representation "may be" inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted).

But this standard gives way to a presumption of adequacy of representation in two circumstances. First, "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki,* 324 F3d at 1086. (citation omitted). Where this is true, "differences in litigation strategy do not normally justify intervention." *Id*. (citation omitted). Second, there is "an assumption of adequacy when the government and the applicant are on the

same side." *Id.*, citing *City of Los Angeles*, 288 F.3d at 401-02.  Indeed, "[i]n the absence of a 'very compelling showing to the contrary,' it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Id.*, citing 7C Wright, Miller & Kane, § 1909, at 332; *see Pest Comm. v. Miller*, 648 F. Supp. 2d 1202, 1213-14 (D. Nev. 2009) (applying heightened standard to where the Nevada Secretary of State and the intervenors shared the same interest).

 Thus, it is presumed that Defendant Logan, the Registrar-Recorder/County Clerk of Los Angeles County, and Defendant Padilla, California's Secretary of State, government officials on the same side as the Movants, adequately represent them absent a "very compelling showing to the contrary." *Arakaki*, 324 F.3d at 1086.  This very strong presumption of adequate representation is especially well-deserved in this case, in light of Secretary Padilla's repeated public pledges to defend voting rights and maximize voter registration.  This is sufficiently established by the tweets Secretary Padilla has made[2] in just this calendar year.  For example, in January 2018, he tweeted:

> Let me make this clear: I will not tolerate any efforts by this administration to undermine the voting rights of eligible citizens.  Every vote matters, and I'm prepared to stand up for every eligible Californian's right to register and cast a ballot free of unnecessary obstacles.

Popper Declaration, ¶ 3; *see id.*, ¶ 4 ("Voting is not a use-it-or-lose-it right.  Not in California, or anywhere else in our country."); *id.*, ¶ 5 ("I was firm in my refusal to hand over Californians' personal voter info"); *id.*, ¶ 6 ("I'm more committed than ever to continue serving the state of CA by striving to increase voter registration and participation and protect our voting rights."); *id.*, ¶ 7 ("We must continue to defend free and fair elections."); *id.*, ¶ 8 ("Proud to defend the rights of California's voters.").  Similarly, the front page of Secretary Padilla's election website identifies one issue –

---

[2] *See Hawaii v. Trump*, 859 F.3d 741, 773 fn. 14 (9th Cir. 2017), *cert. granted sub nom., Trump v. Int'l Refugee Assistance Project,* 137 S. Ct. 2080 (2017), *vacated and remanded on other grounds*, 138 S. Ct. 377 (2017) (relying on tweets from government account as official statements).

voting rights:

> It's hard to believe that in this day and age, we are working so hard to protect voting rights in the United States of America.  But we are and we must.  I am thankful to serve as California's Chief Elections Officer at such a critical time. . . .  I would be honored to continue serving you in defending and expanding voting rights here in California.

*Id.*, ¶ 9.  Further, in 2016 Secretary Padilla, as co-chair of a voter registration program sponsored by intervenor Rock the Vote, stated that he was "passionate about promoting Rock the Vote's initiative."  *Id.*, ¶ 11.  Surely, he will represent their interests here.

In contrast to this concrete display of vigorous representation, Movants offer only theories about how government interests might, generally speaking, diverge from their own.  Such vague speculation "falls far short of a 'very compelling showing.'"  *Dep't of Fair Employment and Housing v. Lucent Tech., Inc.*, 642 F.3d 728, 740-41 (9th Cir. 2011) (citation omitted); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997).

For example, Movants argue that Defendants are "public servants" with "limited resources and broad constituencies" who face competing "political pressures," all of which could cause them to refrain from emphasizing certain arguments or to resolve the case differently than Movants would.  Mov. Br. 14-15.  The assertion that California and its Justice Department are not financially equipped to litigate this case is without merit.  The California's Department of Justice's had a $894-million-dollar budget for 2017-2018.  *See* Popper Decl., ¶ 10.  Certainly, it is not does not need to rely on intervenors to cover expenses related to defending itself against alleged violations of federal law.

Even if these concerns had a grounding in reality (they do not), they would, if accepted, swallow the general rule that government representation is presumed to be adequate.  *See Prete v. Bradbury*, 438 F.3d 949, 957-58 (9th Cir. 2006) (rejecting argument that "budget constraints" overcame government-representation presumption,

reasoning that "[v]irtually all governments face budget constraints" and movants' argument would eliminate the presumption); *see also Wilson*, 131 F.3d at 1307 (arguments about the nature of government generally were insufficient, otherwise "proposed intervenors could *always* satisfy the third prong of Rule 24(a)(2) if the defendant" were a government entity).

Arguments that Movants would defend more vigorously than existing parties do not amount to a showing of inadequate representation. *Tahoe Reg'l Planning Agency*, 792 F.2d at 779. Speculation that Movants might stress different facts and make different arguments is likewise not enough. *See Daggett v. Commission on Gov. Ethics*, 172 F.3d 104, 112 (1st Cir. 1999) (holding that speculation is not enough to show state's Attorney General would "soft-pedal arguments so clearly helpful to his cause") (citation omitted). Bald claims that Movants' interests might otherwise diverge from those of government defendants, or may involve different motivations, is speculative and does not justify intervention. *Wilson*, 131 F.3d at 1307 (citation omitted); *United States v. California*, No. 2:18-CV-490-JAM, 2018 U.S. Dist. LEXIS 71403, at *7 (E.D. Cal. April 27, 2018), quoting *Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*, 775 F. Supp. 353, 359 (D. Or. 1991) ("The interest of a putative intervenor is not inadequately represented by a party to a lawsuit simply because the party to the lawsuit has a motive to litigate that is different from the motive to litigate of the intervenor."); *see also Earth Island Inst. v. Evans*, 136 F. App'x 34, 36 (9th Cir. 2005) ("associations' different motives to litigate" did not constitute a neglected "necessary element") (citations omitted); *SEC v. Private Equity Mgmt. Grp., Inc.*, No. 09-2901-PSG, 2009 U.S. Dist. LEXIS 135683, at *13 (C.D. Cal. Aug. 5, 2009) (denying intervention where proposed intervenor "only established that it seeks to intervene because it apparently disagrees with the strategy taken by" an existing party).

The Ninth Circuit cases involving governmental parties cited by Movants are distinguishable.[3] None of them involves a statewide defendant like Alex Padilla,

---

[3] Movants rely on *Meek v. Metropolitan Dade Cnty., Fla.*, 985 F.2d 1471, 1478

California's Secretary of State.   The only Ninth Circuit case allowing private intervention alongside a State defendant is *Sagebrush Rebellion v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), where the defendant/Secretary of Interior James Watt had previously been the director for interest group representing the plaintiffs.   The Court referred "only half jokingly" to the case as "*Watt v. Watt*."   *Wilson*, 131 F.3d at 1306, citing *Sagebrush*, 713 F.2d at 528.   The Ninth Circuit aptly distinguished *Sagebrush Rebellion* in *Wilson*, where the Governor and Attorney General had vigorously defended a challenged proposition through litigation and their political platforms.   *Id.* This case, like *Wilson*, presents the opposite situation from *Sagebrush Rebellion*.   In addition to Padilla's public pledges to defend voting rights and maximize voter turnout, he has served as co-chair for a registration program launched by Rock the Vote in 2016. (*See* Popper Decl., ¶¶ 3-11).   He obviously shares intervenors' goals and would adequately represent their interests.

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) is distinguishable because in that case the City of San Diego had frankly "acknowledge[d] that it 'will not represent proposed intervenors' interests in this action.'"   And in *Johnson v. San Francisco Unified School Dist.*, 500 F.2d 349, 353-54 (9th Cir. 1974), a school desegregation case, the Ninth Circuit found the local school district could not adequately represent the interests of Chinese-American parents, in part because the district "authored the very plan which appellants claim impairs their interest[s]."   In contrast, Movants here seek to *defend* Defendants' maintenance of Los Angeles County's voter rolls, and maintain that it is the relief *Plaintiffs* seek that threatens to impair their interests.

Finally, the fact that one of the Movants has, in the past, filed a lawsuit

_____

(continued…)

(11th Cir. 1993), and *Bellitto, supra*, from the Eleventh Circuit.   But the Eleventh Circuit has not consistently applied the presumptions of adequacy that the Ninth Circuit has so clearly endorsed.   *See Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007) (characterizing the presumption raised by common objectives as a "weak" one.

challenging Secretary Padilla (and others) regarding a *different* provision of the NVRA is irrelevant.  In evaluating whether representation is adequate, "the focus should be on the 'subject of the action.'"  *Berg*, 268 F.3d at 823, quoting *Sagebrush Rebellion, Inc.,* 713 F.2d at 528; *see* FED. R. CIV. P. 24(a)(2) (allowing intervention where interest related to property or a transaction "that is the subject of the action" is not adequately represented).

The simple fact is that Movants, Defendant Padilla, and Defendant Logan all maintain that Los Angeles County and the State of California have properly conducted list maintenance under the applicable laws, and all agree that Plaintiffs' claims are meritless.  Because Defendants Padilla and Logan are government officials on the same side as Movants, they must make a very compelling showing to defeat the presumption that Defendants adequately represent their interests.  *Arakaki*, 324 F.3d at 1086.  This they fail to do.  The facts here "do not even begin to rebut the presumption of adequacy. On the contrary, they bear it out."  *Wilson*, 131 F.3d at 1305.

## II.   THE COURT SHOULD DENY MOVANTS' REQUEST FOR PERMISSIVE INTERVENTION.

The permissive intervention Movants seek is only available where an applicant demonstrates "a claim or defense that shares with the main action a common question of law or fact."  FED. R CIV. 24(b)(2).  If the asserted claim or defense "contains no question of law or fact that is also raised by the main action, intervention under Rule 24(b)(2) must be denied."  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011); *see also Fair Political Practices Com'n v. U.S. Postal Serv.*, No. 2:12-CV-93-GEB, 2012 U.S. Dist. LEXIS 58759, at *11 (E.D. Cal. Apr. 26, 2012).  Only if there is a common question to a claim or defense is the Court vested with discretion to consider intervention.  *Kootenai Tribe*, 313 F.3d at 1111.

Movants argue they will "assert defenses directly responsive to Plaintiffs' claims that Defendants have failed to comply with the voter list maintenance requirements of

Section 8 of the NVRA." Mov. Br. 14 (citations and alterations omitted).] But defenses about what Los Angeles County has and has not done are not the Movants' to raise. *See True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 709 (S.D. Miss. 2014) (holding that the Republican Party was an improper defendant under the NVRA). Plaintiffs have not sued Movants for failing to maintain reasonable list maintenance procedures, nor could they here or anywhere else. Movants are not the persons charged by the NVRA to conduct list maintenance. Defendants are.

As Justice O'Connor explained, while there is no requirement that the intervenor have "a direct personal or pecuniary interest in the subject of the litigation," the permissive-intervention Rule "plainly *does* require an interest sufficient to support a legal claim or defense which is 'founded upon [that] interest.'" *Diamond v. Charles*, 476 U.S. 54, 77 (1986) (O'Connor, J., concurring) (citation omitted). The "primary focus of Rule 24(b) is intervention for the purpose of litigating a claim on the merits." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992).

Other federal cases addressing the meaning of "claim or defense" within the meaning of Rule 24(b) are in accord. *Donahoe v. Arpaio*, No. CV10-2756-PHX, 2012 U.S. Dist. LEXIS 93497, at *14 (D. Ariz. July 6, 2012) (denying permissive intervention where movant had "no claim or defense at all" and requested the Court resolve a question of law "untethered to any 'claim or defense'"); *United States v. Brooks*, 164 F.R.D. 501, 506 (D. Or. 1995) (intervenor "has no claim or defense in common with the main action. The tax refund check was made payable to the [personal representatives], and they are the only proper defendants against whom the United States may obtain judgment."), *aff'd* 163 F.R.D. 601, 605 (D. Or. 1995); *Laube v. Campbell*, 215 F.R.D. 655, 659 (M.D. Ala. 2003) (adopting and applying Justice O'Connor's reasoning from *Diamond*); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin*, 116 F.R.D. 608, 611 (W.D. Wis. 1987) (finding permissive intervention inapplicable where the movant "does not articulate a claim or defense per se, but rather recites a number of aspects of its interest in the [subject of the

action]").

Even if the criteria for permissive intervention were met, intervention would not be automatic, and the Court would have discretion to deny Movants' application. *Donnelly*, 159 F.3d at 412 (citations omitted).  In exercising such discretion, the Court would be required to "consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties."  *Id.* (citations omitted); FED. R. CIV. P. 24(b)(3).  The Court could also consider "the nature and extent of the intervenors' interest" and "whether intervenors' interests are adequately represented by other parties."  *Perry*, 587 F.3d at 955 (citation omitted).

The inevitable inefficiency that comes with expanding a case from two defendants to five necessarily entails a degree of delay and expense.  *See Perry*, 587 F.3d at 955 (affirming finding of delay where district court found that, if intervention were allowed, "each group would need to conduct discovery on substantially similar issues").  This is especially the situation here, in this NVRA Section 8(a)(4) litigation, which is data driven and requires significant discovery.  [Doc. No. 38-2, ¶ 4.]  In fact, the parties expect to take approximately thirty (30) depositions.  Even if Movants' sought to schedule no additional depositions (which is not guaranteed), coordinating the planned depositions with another set of lawyers would become much more difficult. *Brown*, 2016 U.S. Dist. LEXIS 191495, at *9 (denying permissive intervention because *inter alia* it would "ultimately delay the proceedings" and "force all parties to conduct additional discovery") (citation omitted).

In addition, Movants' proposed Answer in intervention will have the effect of revisiting factual matters that had been resolved by the current parties' pleadings. Defendants Logan and Secretary Padilla have jointly admitted, in whole or in part, seven allegations in Plaintiffs' complaint.  These include partial or complete admissions regarding the identities of persons living in Los Angeles County, the number of registered inactive voters in Los Angeles County, and correspondence exchanged between Judicial Watch and Defendants.  [Doc. No. 24, ¶¶ 5-8, 35, 69, 74; Doc. No. 25,

¶¶ 5-8, 35, 69, 74.]  These admitted facts are conclusively established for purposes of this litigation.  *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  However, Movants' Answer denies, on insufficient information, all of these allegations.  [Doc. No. 32, ¶¶ 5-8, 35, 69, 74.]  Because these allegations would now be in dispute if Movants were allowed to intervene and file their proposed Answer, granting Movants' intervention motion would have the effect of reopening issues that the current parties have resolved.  *See Tahoe Reg'l Planning Agency*, 792 F.2d at 779 (affirming district court's conclusion that intervention by those with interests adequately represented "would be redundant and would impair the efficiency of the litigation.").

For all of these reasons, permissive intervention is unwarranted and unnecessary.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the pending motion to intervene.

Dated:        May 14, 2018                    Respectfully Submitted,

                                             ∠

*s/ Charles H. Bell, Jr.*

CHARLES H. BELL, JR. (SBN 60553)
   Email:  cbell@bmhlaw.com
PAUL GOUGH (SBN 75502)
   Email:  pgough@bmhlaw.com
BRIAN T. HILDRETH (SBN 214131)
   Email:  bhildreth@bmhlaw.com
   13406 Valleyheart Drive North
   Sherman Oaks, CA 91423
   Tel.:  (818) 971-3660/(916) 442-7757
   Facs.: (818) 986-2581/(916) 442-7759

ROBERT D. POPPER*
   Email:  rpopper@judicialwatch.org
RAMONA R. COTCA*
   Email:  rcotca@judicialwatch.org
ERIC W. LEE*
   Email:  elee@judicialwatch.org
   425 Third Street SW, Suite 800
   Washington, D.C. 20024
   Tel.: (202) 646-5172
   Facs.: (202) 646-5199

H. CHRISTOPHER COATES*
   Email:  curriecoates@gmail.com
   934 Compass Point
   Charleston, South Carolina 29412
   Tel.:  (843) 609-0800

*Admitted pro hac vice*

*Attorneys for Plaintiffs Judicial Watch, Inc.,
Election Integrity Project California, Inc.,
Wolfgang Kupka, Rhue Guyant, Jerry
Griffin,and Delores M. Mars*

**PROOF OF SERVICE**

Case No: 2:17-cv-08948

1.      I am over the age of 18 and not a party to this cause.  I am employed in the county where the mailing occurred.  The following facts are within my first-hand and personal knowledge and if called as a witness, I could and would testify thereto.

a. My business address is 455 Capitol Mall, Suite 600, Sacramento, CA 95814.

b. My electronic service address is: kmerina@bmhlaw.com

2.      On May 14, 2018, I served the foregoing documents entitled:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO INTERVENE (ECF No. 31)**

**DECLARATION OF ROBERT D. POPPER**

on each person named below by attaching a true copy as an attachment and by transmitting by email, pursuant to agreement by the parties, to the offices of the addressees shown in Item 3 following ordinary business practices during ordinary business hours.

3.      Name and address of each person served:

| **Counsel:** | **Party Represented:** |
| --- | --- |
| Paul Stein<br>Paul.stein@doj.ca.gov | *Alex Padilla* |
| Emmanuelle Soichet<br>Emmanuelle.soichet@doj.ca.gov | |
| Andrew Baum<br>abaum@glaserweil.com | *Dean C. Logan* |
| Jessica Jaramillo<br>jjaramillo@glaserweil.com | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on May 14, 2018, at Sacramento, California.

_____
KIERSTEN MERINA